UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIXIE JANETTE,

    Plaintiff,

v.

AMERICAN FIDELITY GROUP, LTD., a
foreign corporation, UNIVERSAL PAYROLL
SYSTEMS, a Michigan corporation, TOM
PARKER GENERAL AGENCY, a Michigan
corporation, UNIVERSAL FIRE & CASUALTY
INSURANCE COMPANY, a foreign corporation,
AMERICAN INVESTIGATORS, INC., a
Michigan corporation, UNIVERSAL HOLDING
CORPORATION, a Michigan corporation,
Jointly and Severally,

    Defendants.
_____/

Case No.: 05-74796
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on August 23, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court a the Motion for Summary Judgment prepared on behalf of all of the Defendants (Docket #27). Plaintiff has filed a response, to which Defendants have replied. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the

briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion for Summary Judgment filed by Defendants is GRANTED.

## II. BACKGROUND

Plaintiff began working as an employee of American Fidelity Group, Ltd. ("AFG") in 1999. Plaintiff worked for AFG as an employee until she voluntarily terminated her employment in December 2004. There is no dispute that Plaintiff was an employee of AFG during the period from 1999 to 2004 or that she voluntarily terminated her employment. Although she never received a W-2 from any Defendant other than AFG, her employment responsibilities for AFG included doing accounting work for AFG and the other Defendants.[1] Throughout her employment by AFG, Plaintiff experienced health problems due to Crohn's disease and Fibromyalgia.

After Plaintiff voluntarily terminated her employment, she and an agent of the Defendants, Pete Loughrin ("Loughrin"), continued to talk. Eventually, the parties agreed that Plaintiff would resume performing certain payroll, accounting and bookkeeping services for Defendants. The parties did not execute a written agreement documenting the terms pursuant to which Plaintiff would provide such services. In an email dated January 18, 2005 (the "January email"), which was sent from Loughrin to other agents of the Defendants, Loughrin stated that

> We decided the following: . . .
>
> • Dixie will do the payroll for all employees every other week for a flat fee of $250 for each payroll. . . .

---

[1] The other named Defendants include Universal Payroll Systems ("UPS") (which is actually a division of AFG, not a separate corporate entity), Tom Parker General Agency ("TPGA"), Universal Fire & Casualty Insurance Company ("UFCIC"), American Investigators ("AI") and Universal Holding Corporation ("UHC"). AFG's main business is bail bonding. TPGA and UFCIC provide insurance for bail bonding companies. AI is a private investigation firm. UHC is simply a holding company.

* * * * *

- Dixie will handle all UFC administrative and secretarial duties for a flat fee of $1,200 per month. . . .

* * * * *

- Dixie will be paid as an independent contractor (DLJ Accounting or some such thing). She will be entitled to no benefits; no holiday pay; no vacation pay.

- Dixie will also train Michelle and oversee the closing of the books for November, for December and for January for all of the other companies. . . . She is to be paid up to $600 per week for these services. It is Dixie's responsibility to make sure that Michelle and Cindy and Tom and whomever . . . gets [sic] their jobs done! . . .

* * * * *

- If it works, it can continue indefinitely. If it does not work, then changes will be made.

Plaintiff was not a direct recipient of the email, but she was "cc:"ed on the email. When Plaintiff began providing services again in 2005, she worked both from home and at AFG's office. A significant portion of the work Plaintiff performed in 2005 consisted of doing the payroll for all of the Defendants. Plaintiff did not receive a regular paycheck for the work she performed on behalf of Defendants in 2005. Rather, she generated invoices in the name of "DLJ Accounting Services" and was paid only after the invoices were submitted. She was paid the full amount of her invoices (without any withholding for payroll taxes), and she received 1099s rather than W-2s for 2005.

In June 2005, Plaintiff gave notice that she was terminating her services after being told that tasks she was not completing in a timely manner were going to be removed from her contract. Plaintiff then filed a claim against AFG (but not any of the other defendants) with the EEOC.

3

Plaintiff alleged that Defendants had engaged in employment discrimination against her, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"). After obtaining a right to sue letter, Plaintiff filed this lawsuit. Defendants now seek to have the case dismissed, arguing that Plaintiff is not an eligible for ADA protection, as a matter of law, because she was hired as an independent contractor rather than as an employee.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at

324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

### A. ADA Action Necessitates an Employee

It is well-settled that an independent contractor may not maintain an action for employment discrimination under the ADA. The ADA requires an employer-employee relationship. *See* 42 U.S.C. § 12111(4); *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir.1998) ("In order to succeed in a discrimination claim under the ADA, Plaintiff must prove that she is an employee rather than an independent contractor.") The determination of whether a plaintiff qualifies as a statutory employee is a mixed question of law and fact that a judge normally can make as a matter of law. *Lilley v. BTM Corp.,* 958 F.2d 746, 750 n.1 (6th Cir. 1992).

### B. No Express Agreement

In determining whether an independent contractor or employment relationship exists, a court may be guided by the parties' intent, as reflected by their express agreements. *See, e.g., Weary v. Cochran,* 377 F.3d 522, 525 (6th Cir. 2004); *Eyerman v. Mary Kay Cosmetics, Inc.,* 967 F.2d 213, 218 (6th Cir. 1992) ("Our analysis begins with the [parties' contract,] which unambiguously declared Eyerman to be an independent contractor"); *Wolcott v. Nationwide Mut. Ins. Co*., 884 F.2d 245, 251 (6th Cir. 1989) (recognizing the significance of the agreement's characterization of the relationship as "an independent contractor and not an employee").

Despite Defendants contentions to the contrary, the Court finds that there is no express agreement between the parties in this case. The January email (which Defendants rely on as an express agreement) states "We decided the following: . . ." It was not addressed to Plaintiff (who was only a "cc:" on the email), so it is not even clear who "We" refers to in the email. Moreover, in reviewing the docket for this case, there is no document to which Plaintiff is a signatory that contains the terms of the January email. Further, there is no evidence in the record that Plaintiff agreed with the statements of Loughrin in the January email that Plaintiff expressly agreed that the work she was to provide to Defendants would be as an independent contractor (although the Court notes that Plaintiff has not provided any documentation which demonstrates that she objected to the terms of the January email at the time it was sent). As such, Defendants' contentions that the January email "unambiguously declares that Plaintiff was an independent contractor" are misplaced, as are Defendants' repeated conclusions and arguments that an "Independent Contractor Agreement" exists.

**C.     Independent Contractor Pursuant to Common Law**

In the absence of an express agreement, the Court turns to the common law on agency to evaluate whether Plaintiff provided services to Defendants as an employee or an independent contractor. The Sixth Circuit set forth the relevant factors for determining whether a person is performing as an employee or an independent contractor in *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir.1998) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992)):

> In order to succeed in a discrimination claim under the ADA, Plaintiff must prove that she is an employee rather than an independent contractor. In making this determination, this Circuit has applied the following factors: the hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the

> hired party's role in hiring and paying assistants; whether the work is
> part of the hiring party's regular business; the hired party's employee
> benefits; and tax treatment of the hired party's compensation.

A later Sixth Circuit opinion, also citing *Darden*, added two factors: (1) the source of the instrumentalities and tools, and (2) whether the hiring party is in business. *See Weary v. Cochran*, 377 F. 3d. 522, 525 (6th Cir 2004). A court must assess and weigh all of the incidents of the parties' relationship. *Darden*, 503 U.S. at 324 (citing *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)). There is no "shorthand formula" or "magic phrase" that can be applied to find the answer, however, and no one factor is decisive. *Id*.

*1.     Control*

The Court finds that this factor weighs in favor of finding that the parties had an independent contractor relationship. Supervision of the "means and manner" of the worker's performance is indicative of an employee, while steps taken to "monitor, evaluate, and improve the results" of the work, without supervision over the means by and manner in which the work is accomplished, indicates that the worker is an independent contractor. See *City Cab of Orlando, Inc. v. N.L.R.B.*, 628 F.2d 261, 264 (D.C.Cir.1980); *C.C. Eastern, Inc. v. N.L.R.B*. 60 F.3d 855, 858, 314 U.S.App.D.C. 12, 15 (D.C. Cir. 1995). As the Sixth Circuit explained: "In this era of exclusive licensing agreements and widespread franchising, a contract dictating the details of a business down to the color of its napkins and pens may be more an indicator of bargaining power or business practice than of an actual employer-employee relationship." *Ware v. United States*, 61 F.3d 574, 578 (1995).

Plaintiff argues that Defendants controlled the means and manner of her work, but the only evidence she offers to support this contention is that Defendants determined the priority of her tasks. In business, however, persons producing payroll and financial reports must do so within the time

7

parameters required by the client(s). When the client sets deadlines for performing the tasks, that is part of business. Such deadlines do not constitute control by the hiring party over the hired party, nor do such deadlines or priority of tasks being completed constitute control over the means and manner by which the hired party must perform. In addition, Plaintiff performed much of her work independently from her home. As such, she performed without supervision, and Defendants could not control either the means or manner of her work.

*2.    Skill Required of the Hired Party*

Plaintiff argues that while she "is adept at bookkeeping, she is not an accountant by any means or otherwise trained in the field of accounting." Plaintiff suggests that, as such, she must be an employee due to her lack of education, professional achievement and transferable, marketable skills. It is undisputed that Plaintiff's educational experience is relatively limited. She has a high school education and has attended a seminar or two in the relevant practice area. By her own account, her professional experience consists of working as (a) an accounting assistant for four years, (b) a bookkeeper for two years, (c) an office manager for thirteen years, and (d) a bookkeeper/office manager for five years. For Defendants, she maintained the books of the companies for the use of the accountant to do the tax returns.

For a business other than AFG (and the other Defendants), the Court might be reluctant to conclude that Plaintiff has marketable skills. She is not a certified public accountant and her skills would not necessarily be valuable to many business entities. Based on her work experience (and specifically her work experience for and familiarity with AFG (and the other Defendants) from 1999 to 2004), however, she was very knowledgeable about the bookkeeping and payroll condition of the Defendants. Although she did not perform the accounting itself for the Defendants, she did gather

8

data, prepared many reports and completed many projects for the Defendants. She certainly had transferable, marketable skills for the bookkeeping and payroll (if not accounting) work to be performed for the Defendants.

For the foregoing reasons, the Court concludes that Plaintiff's extensive skill and knowledge of Defendants' financial condition weighs in favor of treating her as an independent contractor.

3.  *Duration of the Parties' Relationship*

Plaintiff asserts that Plaintiff and Defendant had a relationship from 1999 to June 2005 and that her duties were the same following her rehire in 2005 as they were from 1999 to 2004. The 1999 to 2004 relationship indisputably was that of an employer-employee. As Plaintiff terminated that relationship in 2004, however, the Court finds that relationship irrelevant for purposes of analyzing the parties' relationship in 2005, when a new relationship was established. The relevant analysis is limited to the duration of the parties' relationship at issue (*i.e.*, the period from January 2005 to June 2005).

Individuals hired and paid on a per project basis or for a definite duration are more likely independent contractors. *Trustees of Mich. Reg. Council of Carpenters Employee Benefits Fund v. Fox Bros. Co.*, No. 05-CV-70262, 2005 WL 3579173, at 4 (E.D. Mich., Dec. 27, 2005). In the instant case, Plaintiff was performing a series of projects for Defendants and the duration of the relationship was indefinite (according to the January email, if the relationship worked, it would "continue indefinitely. If it does not work, then changes will be made."). While the indefinite period of the relationship would weigh in favor of treating the relationship as one of employment, the fact is that Plaintiff began performing services on behalf of Defendants in January 2005 and ceased providing services in June 2005. The short duration of the relationship is more indicative of an independent

contractor relationship than an employment relationship. The fact that Plaintiff was performing a series of projects (for which she was paid a flat fee per project) further supports that conclusion.

4.  *Hiring Party's Right to Assign Additional Projects*

Plaintiff asserts that Defendants "had and utilized the right to assign additional tasks to" Plaintiff and that Defendants dictated the priority of the new tasks as well as the old ones. Plaintiff states that she "was ordered to troubleshoot errors and correct them and ordered to perform multi year comparisons." Plaintiff also states that she "received orders to complete additional tasks by her bosses when they had her type letters, balance running premium tax reports each month, reconcile discrepancies in premium tax figures because the audit firm was running reports on cash basis rather than accrual basis, run labels for Defendant's agents hockey league, and assist other employees with 1099's and regulatory filings."

Defendants contend that Plaintiff was told by Loughrin that she could say "no" to any request to perform any additional tasks. Requests, Defendants argue, were not requirements. Defendants further argue that the "additional" tasks cited by Plaintiff (as discussed above) were not additional work but rather actions that needed to occur in conjunction with the tasks she agreed to complete - namely accurate work product.

As to the matters related to obtaining the goal of accurate financial records and reports, the Court agrees with Defendants that such tasks do not constitute additional tasks. Similarly, assisting employees of Defendants with 1099s and regulatory filings seems consistent with the bookkeeping and payroll matters which Plaintiff agreed to perform. Some of the tasks Plaintiff states she was asked to perform, however, such as typing letters and running labels for a hockey team, appear to be tasks that would not fall within the parameters of what Plaintiff agreed to do in 2005. Such tasks

10

appear to be minor and ones that Plaintiff could have said "no" to performing, however, they are "additional projects."

Taken as a whole (and in a light most favorable to Plaintiff), the Court concludes that this factor weighs slightly in favor of an employment relationship. The Court emphasizes, however, that this factor barely supports the indicia of an employment relationship.

5.  *Hired Party's Discretion over When and How Much to Work*

The Court concludes that this factor favors a finding of independent contractor status. Plaintiff had complete discretion over when and how much to work. She chose when to work and where to work in 2005. Plaintiff generally worked at the hours she established (whether that was during normal business hours or at other times), and her email correspondence reveals that she often worked during non-business hours. She frequently worked at home and occasionally worked in the office, sometimes at the request of the Defendants (primarily when it was necessary for Plaintiff to meet with someone or to sign documents, as evidenced by emails to and from Plaintiff and the Defendants). When Plaintiff wanted to work at home, she did not seek permission to do so, nor does the correspondence in the record appear to require any such permission. Plaintiff simply notified the Defendants where she would be.[2]

6.  *Method of Payment*

This factor weighs heavily in favor of Defendants. The terms of the January email and the

---

[2] In her deposition, Plaintiff testified as follows:
> Q. On any particular day when you were working at home during normal business hours instead of at the office, did you clear that with anyone ahead of time?
> A. I e-mailed Tom, Judy and Brian in the mornings to let them know that I would be working from home and available.
> Q. Did you ever ask permission to work from your home instead of coming in on a normal business day?
> A. No.

process Plaintiff adhered to in order to get paid are consistent, and together they strongly indicate that the parties had an independent contractor relationship. Pursuant to the January email, Plaintiff was entitled to a flat fee of $250.00 for each payroll she completed, a flat fee of $1,200 per month for UFC administrative and secretarial duties (she was the corporate secretary), and a weekly fee of $600 for providing reconciled and accurate financial statements. Payments to Plaintiff in 2005 were not made on a regular schedule (weekly, bi-weekly, or monthly), as wages to employees are normally paid. Instead, Plaintiff was compensated by AFG only after Plaintiff generated invoices to Defendants on "DLJ Accounting Services" letterhead.

Moreover, the fixed amounts described above were payable irrespective of the amount of time she spent on each task. Payment on a flat fee basis is indicative of independent contractor status. *See, e.g., U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) ("One common feature of an independent contractor relation is compensation by a flat fee . . ."). Payment upon submission of an invoice also is indicative independent contractor status. *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*, 910 F. Supp. 225, 229 (E.D.Pa. 1996) ("The fact that Oshiver submitted invoices to the Firm, that they were for "services rendered" and that they were printed on her own letterhead are indications that she was an outsider to the Firm.").

7. *Hired Party's Role in Hiring and Paying Assistants.*

The parties agree on the fact that Plaintiff had no authority to hire and/or pay any assistants on behalf of Defendants. Plaintiff contends that she had a discussion with Loughrin in 2005 about hiring an assistant for Plaintiff. Plaintiff further contends that Defendants had authority to hire an assistant for her and pay for the assistant, but she did not have that authority. Plaintiff also argues that there were a number of people employed by Defendants who Plaintiff could utilize, but over

whom Plaintiff had no input regarding their employment status or discipline. These contentions, even if true, are not relevant. Defendants could make decisions *vis a vis* their employees (or hire new ones) at any time. If Plaintiff wanted to hire someone to assist her, however, nothing in the record suggests that Plaintiff could not hire and pay an assistant to help her with her work. The Court is not persuaded that this factor favors either party's position.

*8.     Plaintiff's Services Not Part of the Hiring Party's Regular Business*

In this case, the work performed by Plaintiff had nothing to do with Defendants' businesses. Plaintiff performed bookkeeping, accounting and payroll services. Such services are essential to the functioning of any business, but they are not services which are related to the "business" of the Defendants, *i.e.,* bail bonds, bail bond insurance and private investigations. This factor therefore favors a finding of an independent contractor relationship.

*9.     Hired Party's Lack of Employee Benefits*

The January email indicated that Plaintiff would "be entitled to no benefits." Significantly, during the January 2005 to June 2005 period, none of the Defendants paid for benefits on Plaintiff's behalf or provided benefits to Plaintiff. The absence of benefits during that period contrasts with the benefits available to Plaintiff when she worked as an employee for AFG between 1999 to 2004. During that time, Plaintiff participated in a 401K plan and was eligible for medical benefits (although she opted out of the medical coverage in later years). Accordingly, the Court concludes that this factor heavily favors the finding of independent contractor status.

*10.    Tax Treatment of the Hired Party*

This factor also weighs heavily in favor of finding independent contractor status. When

Plaintiff worked as an employee of AFG, she received W-2s each year. For the period she worked in 2005, however, it is undisputed that she received only 1099s. In 2005, none of the Defendants withheld income or employment taxes or made payments to Social Security on Plaintiff's behalf.

*11. Tools and Instrumentalities*

Plaintiff generally worked at home and used her own computer, but she performed some of her tasks at the Defendants' place(s) of business. Accordingly, this factor does not clearly weigh in favor of an employment or independent contractor relationship.

*12. Hiring Party is in Business.*

The Defendants are in business. As noted by the *Weary* court, however, the hiring party usually is a business. In this case, the Court finds that the fact that the Defendants were businesses does not favor a finding of employment or independent contractor status.

**D. Conclusion**

As set forth above, the overwhelming majority of relevant factors favor a finding of an independent contractor relationship between Plaintiff and the Defendants in 2005. The actions and communications of the parties during 2005 clearly demonstrate as much. Although the January email does not constitute an express agreement of an independent contractor relationship, it does demonstrate that Defendants intended such a relationship. The Defendants' actions thereafter consistently reflected an independent contractor relationship, as described above. Moreover, not only did Plaintiff fail to object to the characterization in the January email that she was to be treated as an independent contractor, she did not object to (1) being paid as one (*i.e.,* not having taxes withheld), (2) having to submit invoices prior to getting paid, (3) being paid on an irregular basis, unlike employees who are paid weekly, bi-weekly or monthly; or (4) not receiving benefits. As such, it is

clear to the Court that Plaintiff understood (particularly in light of her duties while working for Defendants) that she was being treated as an independent contractor and not as an employee, even if she enter the arrangement with the intent of being an independent contractor.

For the foregoing reasons, the Court concludes that Plaintiff's relationship with Defendants was that of an independent contractor. As a result, the Court finds that, as a matter of law, Plaintiff cannot maintain a cause of action against Defendants for alleged violations of the ADA, *see* 42 U.S.C. § 12111(4); *Johnson, supra,* and grants the Defendants' Motion for Summary Judgment.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendants' Motion for Summary Judgment is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

                                                s/Lawrence P. Zatkoff
                                                LAWRENCE P. ZATKOFF
                                                UNITED STATES DISTRICT JUDGE

Dated: August 23, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 23, 2007.

                                                s/Marie E. Verlinde
                                                Case Manager 810-984-3290